NO. 07-11-00484-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

SEPTEMBER 17, 2012

RAMIRO MARTINEZ, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2010-426,791; HONORABLE JIM BOB DARNELL, JUDGE

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Ramiro Martinez, appeals his conviction for burglary of a building[1] and resulting sentence of 13 years[2] in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ). Appellant appeals through two issues in which he contends

---

[1] See TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2011).

[2] Burglary of a building other than a habitation is punishable by confinement in a State Jail Facility for a period of 180 days to two years with an optional fine of $10,000. See id. §§ 12.35 (West 2011), 30.02(a)(1). However, appellant pleaded true to two enhancement allegations contained in his indictment alleging two prior felony convictions. Accordingly, appellant's punishment range was that of a second degree felony, from not less than two years to not more than 20 years with an optional fine of $10,000. See id. § 12.425(b) (West 2011).

that the evidence was insufficient to sustain the jury's verdict. We disagree and will affirm.

Factual and Procedural Background

Around midnight on October 12, 2009, Jeffrey Galvan was awakened by the sound of someone attempting to enter his place of business through a back door. Galvan was spending the night in his automotive repair shop and had been asleep in the office portion. As Galvan watched, two figures moved by the windows in the office and went to the part of the shop where the automotive bays were located. Galvan then heard the sound of plexi-glass breaking. Galvan got up from his bed and retrieved his .38 caliber handgun from the parts area of his shop. As Galvan exited the parts area, he observed what appeared to him to be a black male approaching him from approximately 15 to 25 feet away. Galvan fired his handgun and the person in his shop fled, apparently back through the broken plexi-glass window. Galvan thought he heard the burglar issue a cry when the third shot was fired. However, the police were never able to find anyone who sought medical attention for a gunshot wound on the night in question.

During the investigation of the crime scene, Lubbock Police Crime Scene Detective Korie Archambault, located the plexi-glass that had been broken out of the automotive bay's window. Upon closer examination of one of the shards of glass, Archambault noticed two drops of blood. These were photographed and then swabs of the blood were collected. The swabs were ultimately stored in the LPD property room.

2

LPD Detective Phillip Rolan was assigned to the Galvan burglary. Some months after the initial investigation, Rolan received what he characterized in his testimony as an "investigative tip." Where the tip came from was a subject that neither the State nor appellant pursued during Rolan's examination. As a result of the tip, Rolan was directed to appellant, who happened to be in the Lubbock County Jail at that time on an unrelated matter, as a suspect in the Galvan burglary. Rolan took appellant to the Lubbock City Health Department and obtained a sample of his blood. Appellant's blood and the blood recovered from the scene were then submitted to the regional Department of Public Safety Lab for DNA analysis and comparison.

DPS forensic scientist, Steven Hester, tested the blood samples submitted by Rolan. Hester testified that the sample recovered from Galvan's Automotive Shop on the night in question was consistent with appellant's DNA. Hester testified that the probability of selecting a person at random who could be the source of the DNA was 1 in 19.05 quintillion for Hispanics.

At trial, appellant's trial counsel focused primarily on Galvan's testimony and the statements he had given to the police and the 911 operator. In the 911 call, Galvan is heard describing the persons breaking into his shop as black males. During his testimony, Galvan agreed that he had, in fact, told the responding officer that the man he fired his gun at was a black male. Galvan further testified, during cross-examination, that he did not recognize appellant and, to his recollection, had never seen him before.

Based primarily on this evidence, appellant contends that the evidence is insufficient to sustain the jury's verdict. According to appellant's theory, the evidence is

insufficient to prove appellant entered the building with the intention to commit theft. For reasons explained hereafter, we disagree and affirm.

Appellant's sole challenge is to the sufficiency of the evidence. Although appellant presents two issues, we will address these issues together.

## Standard of Review

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Brooks v. State, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." Brooks, 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by Jackson." Id. (Cochran, J., concurring). When reviewing all of the evidence under the Jackson standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. See id. at 906, 907 n.26 (discussing Judge Cochran's dissenting opinion in Watson v. State, 204 S.W.3d 404, 448–50 (Tex.Crim.App. 2006), as outlining the proper application of a single evidentiary standard of review). "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is

4

the sole judge of the witnesses' credibility and the weight to be given their testimony." Id. at 899.

Analysis

In order to convict appellant of the indicted offense, the State had to prove the following elements:

(1)     Appellant,

(2)     on or about the 12th day of October 2009,

(3)     did then and there with intent to commit theft,

(4)     enter a building or a portion of a building not then open to the public,

(5)     without the effective consent of Jerry Galvan, the owner.


See TEX. PENAL CODE ANN. § 30.02(a)(1).[3]

The DNA evidence proves that appellant was at the scene of the burglary at some point in time.  However, appellant's mere presence at the scene of an offense in not sufficient alone to sustain a conviction.  Johnson v. State, 537 S.W.2d 16, 18 (Tex.Crim.App. 1976).  There must be additional evidence that tends to show appellant's guilt, and then presence combined with the additional evidence is sufficient to prove appellant's guilt.  See id.  From the record, we can deduce that appellant's blood was deposited on the shards of glass broken from the door of the automotive bay.

---

[3] Further reference to the Texas Penal Code will be by reference to "section _____" or "§ _____."

The jury heard the testimony that the shards of glass were found inside the repair shop. Further, Galvan testified about hearing the sound of glass breaking only once. Turning to the trial testimony of Garland Timms of the LPD regarding blood spatter analysis as applicable to the two drops of blood found on the shard of plexi-glass found inside the shop, Timms opined that had the plexi-glass been vertical, as inside the window pane, when the drops of blood were transferred to it, the drops would have run or streaked downward. However, these drops were deposited as two circular drops. According to Timms, this means that the blood dropped onto the plexi-glass shard after it was deposited in the bay area of the shop. This testimony further supports the State's theory that, at the very least, appellant's hand was placed inside the shop, as that would explain how the circular drops of blood got on the plexi-glass.

It is from this record that the jury had to determine whether appellant was guilty beyond a reasonable doubt. As a reviewing court, we must defer to the jury as to all issues of credibility and weight to be given the testimony. Brooks, 323 S.W.3d at 899. We must allow the jury to make reasonable inferences from the evidence they hear, the only limitation being that the jury's inferences must be reasonable. See Hooper v. State, 214 S.W.3d 9, 14 (Tex.Crim.App. 2007) (juries permitted to make reasonable inferences from evidence presented at trial). The record clearly reflects that the incident at issue occurred after midnight on October 12, 2009. When reviewing the sufficiency of the evidence regarding intent to commit theft, the law permits the appellate court to measure the sufficiency of the evidence on this issue by use of a presumption that a nonconsensual nighttime entry of a building is with the intent to commit theft. See Mauldin v. State, 628 S.W.2d 793, 795 (Tex.Crim.App. 1982).

6

Looking first at the issue of whether the evidence was sufficient to support the jury's finding of guilt on the question of whether appellant entered the building, we look first to section 30.02(b)(1). This section states that, "[f]or purposes of this section, 'enter' means to intrude: (1) any part of the body." § 30.02(b)(1). The record reflects that the plexi-glass pane was broken and that the shards of glass fell inside the shop. Further, the record reflects that two drops of blood were found on the shards inside the shop. These drops of blood were consistent with having come from appellant, based upon the DNA testing performed. Accordingly, the record provides circumstantial evidence that at least appellant's hand intruded into the shop. With such information, the jury was rational in inferring that appellant entered the building in question. See Jackson, 443 U.S. at 319; Brooks, 323 S.W.3d at 912.

When we apply the foregoing facts and law to the question of the sufficiency of the evidence to support the jury's verdict on the issue of appellant's intent to commit theft, we find that the jury had evidence of a nonconsensual, nighttime entry of a building, and the entry was obtained by force, the breaking of the plexi-glass window. Further, this point of entry was utilized only after the suspects attempted to gain entry through the rear of the business. In measuring the sufficiency of the evidence to support the State's theory of intent to commit theft, we as a reviewing court may consider the inference that arises from a nighttime, nonconsensual entry. See Mauldin, 628 S.W.2d at 795. Therefore, as to the issue of appellant's intent, the jury's verdict was not irrational. See Jackson, 443 U.S. at 319; Brooks, 323 S.W.3d at 912.

7

Because we have found that the evidence is sufficient to support the jury's verdict as to the two particulars brought to the Court's attention by appellant, we overrule both of appellant's issues.

Conclusion

Having overruled appellant's issues, we affirm the trial court's judgment.


Mackey Hancock
Justice


Do not publish.